IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TITAN CLOUD SOFTWARE, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 3:24-cv-00400 |
| CLAY MOORE, ) | Judge Aleta A. Trauger |
| ) | |
| Defendant, ) | |
| ) | |
| And ) | |
| ) | |
| PROTEAN VENTURES, LLC, ) | |
| ) | |
| Intervenor. ) | |

## MEMORANDUM

Before the court is defendant Clay Moore's Motion for Partial Dismissal (Doc. No. 27), seeking dismissal of three of the six claims set forth in plaintiff Titan Cloud Software, LLC's Complaint (Doc. No. 1): (1) intentional interference with business relationships and/or prospective business advantage (Count II); (2) common law unfair competition (Count III), and (3) violation of the Tennessee Consumer Protection Act ("TCPA") (Count VI). The motion is supported by a Memorandum of Law. (Doc. No. 28.) The plaintiff opposes the motion (Doc. No. 33), and the defendant has filed a Reply (Doc. No. 34). For the reasons set forth herein, the motion will be granted in part and denied in part.

I.     LEGAL STANDARDS

The defendant's motion seeks dismissal of claims based on Rule 12(b)(6) of the Federal Rules of Civil Procedure. A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir.

1996). Such a motion is properly granted if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020). To survive a motion to dismiss, a complaint must allege facts that, if accepted as true, are sufficient to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007); *see also* Fed. R. Civ. P. 8(a)(2). A complaint has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (2007). A complaint that "tenders 'naked assertions' devoid of 'further factual enhancement'" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

In ruling on a motion to dismiss under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

II.     FACTS AND PROCEDURAL HISTORY

Plaintiff Titan Cloud Software, LLC ("Titan") is a Tennessee limited liability company in the business of developing and marketing software for environmental compliance, advanced fuel analytics, and facility management. (Doc. No. 1 ¶ 1.) Clay Moore was employed by Titan from 2008 through April 2021 as Senior Product Manager. (*Id.* ¶ 6.) He is now employed as Chief Product Officer by intervenor Protean Ventures, LLC ("Protean"), a direct competitor of Titan. (*Id.* ¶¶ 2, 38, 39.) The plaintiff alleges, in a nutshell, that it has a basis for believing that Moore is violating non-competition and non-disclosure agreements with Titan and sharing Titan's

confidential and trade secret information with his new employer. (*Id.* ¶¶ 62–63. 65.) It asserts that "it is impossible for Moore to serve as Chief Product Officer without using the confidential information and trade secrets he learned at Titan." (*Id.* ¶ 64.)

As a basis for its belief that Moore is now sharing trade secrets and confidential information with Protean, Titan alleges that, during Moore's employment with Titan, he signed many agreements, including a Confidentiality and Non-Competition Agreement ("Titan Agreement"). (*Id.* ¶ 7; *see also* Doc. No. 1-1.) He resigned from Titan in 2021 to work for a direct competitor, Leighton O'Brien ("LOB"), as a Senior Director of Product Management, in connection with which Moore signed a Resignation Agreement and Release with Titan (the "Titan Release") and an employment agreement with LOB containing confidentiality obligations to his new employer ("LOB Agreement"). (Doc. No. 1 ¶¶ 19, 25; *see also* Doc. No. 1-2 (Titan Release); Doc. No. 1-3 (LOB Agreement).) Titan acquired LOB in the Fall of 2023, while Moore was still employed by LOB, as a result of which Moore again became a Titan employee, and Titan, as LOB's successor in interest, acquired the rights to the LOB Agreement and all of LOB's trade secrets. (Doc. No. 1 ¶¶ 27–31.) A few months later, in December 2023, Moore resigned (again) from Titan and went to work for Protean. (*Id.* ¶ 38.)

Titan alleges that, after Moore left, it discovered that Moore had violated his confidentiality and non-competition agreements with Titan, even before leaving Titan to work for LOB. (*Id.* ¶ 46.) For example, he had shared Titan's confidential contract with other LOB employees, providing confidential customer and pricing information to LOB. (*Id.* ¶¶ 48–51.) He also allegedly ("upon information and belief") "caused LOB to incorporate Titan Confidential Information into Alarm (a[n] LOB software product) because this product shows marked similarities with the Titan Edge platform." (*Id.* ¶ 53.) He is also alleged to have solicited Titan customers and shared

confidential Titan information with Titan customers during the twelve-month non-compete period set forth in the Titan Release, thereby breaching the Titan Release as well as other agreements he signed with Titan during his first period of employment by Titan. (*Id.* ¶¶ 55–61.) The plaintiff also alleges that, "after Moore began acting as Protean's Chief Product Officer, Protean's website began touting new software functionality that closely resembles Titan's features" (*id.* ¶ 63), from which Titan apparently infers that Moore shared Titan's protected intellectual property with Protean.

Titan asserts claims against Moore for (1) breach of contract; (2) intentional interference with business relationships and/or prospective business advantage; (3) common law unfair competition; (4) violation of the Tennessee Uniform Trade Secrets Act ("TUTSA"), Tenn. Code Ann. § 47-25-1701, *et seq.*; (5) violation of the federal Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1); and (6) violation of the TCPA, Tenn. Code Ann. § 47-18-104(b)(1). Moore now seeks dismissal of Counts II, III, and VI on the basis that the claims are preempted by the TUTSA or otherwise fail to state claims for which relief may be granted.

### III. DISCUSSION

#### A. Count II: Intentional Interference with Business Relations

The defendant asserts that Count II, for intentional interference, is preempted by the TUTSA. The TUTSA, adopted in 2000, "establishes a statutory scheme governing the definition of, protection from, and penalties for misappropriation of trade secrets." *Hauck Mfg. Co. v. Astec Indus., Inc.*, 375 F. Supp. 2d 649, 653 (E.D. Tenn. 2004). In addition, the TUTSA expressly "displaces conflicting tort, restitutionary, and other law . . . providing civil remedies for misappropriation of a trade secret," but it does not affect "other civil remedies that are not based upon misappropriation of a trade secret." Tenn. Code Ann. § 47-25-1708(a), (b)(2).

Although the Tennessee courts have not frequently addressed the issue, Tennessee district courts and the Sixth Circuit have held, based on this "displacement" language, that the statute preempts "all common law or other claims that would succeed or fail dependent upon proof of improper use of trade secrets." *PartyLite Gifts, Inc. v. Swiss Colony Occasions*, 246 F. App'x 969, 976 (6th Cir. 2007) (citing *Hauck Mfg.*, 375 F. Supp. 2d at 258); *see also*, *e.g.*, *Wachter, Inc. v. Cabling Innovations, LLC*, 387 F. Supp. 3d 830, 845 (M.D. Tenn. 2019) (Richardson, J.) ("TUTSA preempts common law causes of action if 'proof of those causes of action, in whole or in part, would constitute misappropriation of a trade secret.'" (quoting *Vincit Enters., Inc. v. Zimmerman*, No. 1:06-CV-57, 2006 WL 1319515, at *7 (E.D. Tenn. May 12, 2006)). *Accord Ram Tool & Supply Co., Inc. v. HD Supply Constr. Supply Ltd.*, No. M2013-02264-COA-R3-CV, 2016 WL 4008718, at *3, 8 (Tenn. Ct. App. July 21, 2016) (holding that the plaintiff's claims were "preempted by TUTSA to the extent they are based on the misappropriation of trade secrets" but that other claims were not preempted by TUTSA, "so long as [the plaintiff] does not rely on proof at trial that implicates [its] trade secrets and/or confidential information").

Under this "same proof" standard, "a claim will be preempted when it necessarily rises or falls based on whether the defendant is found to have 'misappropriated' a 'trade secret' as those two terms are defined in the [T]UTSA." *PGT Trucking, Inc. v. Jones*, No. 15-1032, 2015 WL 4094265, at *4 (W.D. Tenn. July 7, 2015) (citing *Hauck Mfg.*, 375 F. Supp. 2d at 258, and collecting other federal and Tennessee cases applying the same standard). In other words, "if proof of a non-[T]UTSA claim would also simultaneously establish a claim for misappropriation of trade secrets, it is preempted irrespective of whatever surplus elements or proof were necessary to establish it." *Hauck*, 375 F. Supp. 2d at 658 (citing *Smithfield Ham & Prod. Co. v. Portion Pac, Inc.*, 905 F. Supp. 346, 350 (E.D. Va. 1995)).

In its Response, the plaintiff expressly concedes that "its claim of tortious interference is preempted to the extent it alleges Defendant 'us[ed] Plaintiff's Confidential Information and Trade Secrets to cause Titan's customers to breach their contracts with Titan.'" (Doc. No. 33, at 6 n.1 (quoting Doc. No. 1 ¶ 72).) However, it also maintains that intentional interference claims are entirely "preempted by the TUTSA only 'where confidential information or trade secrets are used to induce conduct or interfere with prior business relationships.'" (Doc. No. 33, at 5 (quoting *Univ. of Tenn. Rsch. Found. v. Caelum Biosciences, Inc.*, 667 F. Supp. 3d 734, 746 (E.D. Tenn. 2023)).) It asserts that its claim is "primarily based on Defendant's breach of contract and solicitation of customers"—specifically Moore's solicitation of Titan customers in violation of the Titan Release—and that, because "proof of intentional interference does not require proof that Moore *actually* misappropriated Titan's trade secrets or other confidential information," its intentional interference claim is not entirely preempted. (*Id.* at 5, 7.)

Moore's Reply effectively concedes that, to the extent Titan's intentional interference claim is *not* predicated on the allegation that Moore used Titan's trade secrets to interfere with customer relationships, it is not preempted. But, as Moore also points out, the parties are apparently in agreement that Count II should be dismissed as preempted to the extent it is based on the allegation that Moore "us[ed] Plaintiff's Confidential Information and Trade Secrets to cause Titan's customers to breach their contracts with Titan." (*See* Doc. No. 1 ¶ 72.)

Accordingly, the Motion for Partial Dismissal will be partially granted as to Count II, insofar as that claim is premised upon Moore's use of trade secret information to engage in tortious interference. However, insofar as Count II is based on allegations that Moore "interfered with Titan's business relationships with its customers in violation of the Titan Release" by "seeking to convert Titan's customers and prospective customers for LOB's own business" and that he is

"continuing to do this currently on behalf of Protean" (*see id.*), the claim is not entirely preempted. In that respect, the motion will be partially denied as to Count II.

B.     **Count III: Common Law Unfair Competition**

Under Count III, Titan alleges that Moore unfairly competed with Titan by (1) breaching his contracts with Titan; (2) causing Titan clients to breach their contracts with Titan; and (3) generally "illicitly obtaining and using Titan's Confidential Information, using Confidential Information regarding Titan's customers, and operating in a deceptive and improper manner by, among other things, infringing upon Titan's intellectual property." (Doc. No. 1 ¶ 76.) Moore argues that the claim should be dismissed because it is duplicative of other causes of action in the Complaint (*i.e..*, breach of contract, tortious interference, and trade secret misappropriation), is "not recognized as a cause of action," and is preempted by the TUTSA, insofar as it is "predicated on the assertion that Moore misused confidential information." (Doc. No. 28, at 6, 7.) The plaintiff argues in response that, to the extent its proof of unfair competition does not require proof of trade secret misappropriation, it is not preempted by the TUTSA and that courts do in fact recognize stand-alone unfair competition claims, although the parameters of such claims in Tennessee are admittedly "somewhat unsettled." (Doc. No. 33, at 8 (citing *Moore v. Weinstein Co.*, No. No. 3:09-0166, 2010 WL 8913520, at *11 (M.D. Tenn. May 12, 2010)).)

The parameters of an unfair competition claim are indeed somewhat unsettled. Tennessee courts have recognized that

> unfair competition . . . can be found when the defendant engages in any conduct that amounts to a recognized tort and when that tort deprives the plaintiff of customers or other prospects. Liability for such losses may be imposed from defamation, disparagement, intimidation or harassment of the plaintiff's customers or employees, obstruction of the means of access to his place of business, threats of groundless suits, commercial bribery and inducing employees to commit sabotage.

*B & L Corp. v. Thomas & Thorngren, Inc.*, 162 S.W.3d 189, 216 (Tenn. Ct. App. 2004) (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 130, at 1013 (5th ed. 1984)), *overruled in other part by Fam. Tr. Servs. LLC v. Green Wise Homes LLC*, 693 S.W.3d 284 (Tenn. 2024). However, in *B & L Corp.*, the Tennessee Court of Appeals took note of the Sixth Circuit's formulation of the tort in *Sovereign Order of St. John v. Grady*, 119 F.3d 1236, 1243 (6th Cir. 1997),[1] and quoted at length this court's discussion of unfair competition in *Dade Int'l, Inc. v. Iverson*, 9 F. Supp. 2d 858, 862 (M.D. Tenn. 1998). *See B & L Corp.*, 162 S.W.3d at 215 n.7. In *Dade*, this court observed that *Prosser and Keeton*, on which the Tennessee Court of Appeals relied heavily in *B & L Corp. v. Thomas & Thorngren, Inc.*, 917 S.W.2d 674 (Tenn. Ct. App. 1995),

> describes the tort of unfair competition as arising "when the defendant engages in any conduct that amounts to a recognized tort and when that tort deprives the plaintiff of customers or other prospects." It further emphasizes that "[u]nfair competition thus does not describe a single course of conduct or a tort with a specific number of elements; it instead describes a general category into which a number of new torts may be placed when recognized by the courts." Thus, it appears that the tort of unfair competition is *simply a remedy for economic loss that is incurred from an underlying violation of a tort or a breach of contract*.

*Dade Int'l*, 9 F. Supp. 2d at 862 (quoting Prosser and Keeton, § 130 at 1014, 1015) (emphasis added). In other words, as this court viewed it in 1998, unfair competition is simply a description

---

[1] In *Sovereign Order*, the Sixth Circuit stated:

> Although Tennessee law regarding unfair competition is not well-developed, it appears that there are three elements to this tort. A plaintiff must prove that: (1) the defendant engaged in conduct which "passed off" its organization or services as that of the plaintiff; (2) in engaging in such conduct, the defendant acted with an intent to deceive the public as to the source of services offered or authority of its organization; and (3) the public was actually confused or deceived as to the source of the services offered or authority of its organization.

*Sovereign Ord.*, 119 F.3d at 1243. It does not appear that any Tennessee court since *Sovereign Order* has actually applied or used this formulation. Under this definition of the claim, the Complaint does not state a claim for unfair competition.

of various torts (or breach of contract) that cause damages in the form of the deprivation of customers or business prospects.

However, Tennessee courts, albeit in unpublished decisions, have continued to recognize unfair competition claims when the plaintiff shows "conduct that amounts to a recognized tort, and when the tort deprives the plaintiff of customers or other prospects." *FTA Enters., Inc. v. Pomeroy Computer Res., Inc.*, No. E2000-01246-COA-R3-CV, 2001 WL 185210, at *5 (Tenn. Ct. App. Feb. 12, 2001); *see also Dominion Enters. v. Dataium, LLC*, No. M2012-02385-COA-R3-CV, 2013 WL 6858266, at *7 (Tenn. Ct. App. Dec. 27, 2013) (affirming the dismissal of unfair competition claim based on the plaintiff's failure to prove an underlying tort)). And federal district courts within Tennessee generally apply the same standard, without actually discussing whether unfair competition qualifies as a standalone claim. *See, e.g.*, *RN Ent., LLC v. Clement*, 380 F. Supp. 3d 711, 721 (M.D. Tenn. 2019) (Crenshaw, J.) (dismissing unfair competition claim as preempted by the TUTSA while noting that "[u]nfair competition is a broad term encompassing several related torts involving improper interference with business prospects" (quoting *J.T. Shannon Lumber Co. v. Barrett*, No. 2:08-cv-2847-JPM-cgc, 2010 WL 3069818, at *13 (W.D. Tenn. Aug. 4, 2010))); *La.-Pac. Corp. v. James Hardie Bldg. Prods., Inc.*, 335 F. Supp. 3d 1002, 1020 (M.D. Tenn. 2018) (McCalla, J.) ("Unfair competition is a generic name for several related torts involving improper interference with business prospects. Common law unfair competition requires as a predicate that the defendant commit another recognized tort [and that] the predicate tort . . . deprive the plaintiff of customers or other prospects." (citations omitted)), *aff'd*, 928 F.3d 514 (6th Cir. 2019).

Although it remains unclear whether an unfair competition claim may exist as a standalone claim or whether it simply provides an additional category of recoverable damages that may be

available for the plaintiff's other claims, the court will not dismiss the claim as duplicative at this juncture.

Regarding preemption, insofar as the plaintiff's unfair competition claim relies on trade secret misappropriation as the underlying predicate tort, it is preempted.[2] In addition, the claim is partially based on allegations that Moore "infring[ed] upon Titan's intellectual property in various respects." (Doc. No. 1 ¶ 76.) Titan acknowledges that its "intellectual property" is included within the rubric of its "Confidential Information and Trade Secrets." (*Id.* ¶ 36.) Titan insists that this portion of the claim is not preempted, because misuse of intellectual property is actionable regardless of how Moore acquired the intellectual property. (*See* Doc. No. 33, at 9 ("Titan could prove unfair competition simply through Defendant's mislabeling of and 'passing off' Titan's software functionality as his own, regardless of how Defendant acquired Titan's products.").) The court is not persuaded. First, there are no allegations that *Moore*, the only defendant identified in the Complaint, passed off Titan's intellectual property as his own. He is only alleged to have misappropriated Titan's intellectual property by passing it off to Protean—and the plaintiff apparently believes that *Protean* is now using it and passing it off as its own. (*See* Doc. No. 1 ¶ 63.) Second, the only "intellectual property" at issue in this case is Titan's confidential and proprietary information—that is, its trade secrets—that Moore allegedly misappropriated. Insofar as the unfair competition claim is premised upon Moore's "infringement" upon Titan's "intellectual property" by conveying it to others, the claim is preempted by the TUTSA. In sum, insofar as the claim is "dependent upon proof of improper use of trade secrets," it is preempted and will be dismissed. *PartyLite Gifts*, 246 F. App'x at 976.

---

[2] *See* Doc. No. 1 ¶ 76 (alleging that "Moore has unfairly competed with Titan by . . . obtaining and using Titan's Confidential Information [and] using Confidential Information regarding Titan's customers").

However, the Complaint premises the unfair competition claim at least in part on Moore's allegedly breaching his contracts with Titan regarding the solicitation of Titan's customers. In this respect, the Motion for Partial Dismissal will be partially denied as to this element of the unfair competition claim. Further, the court emphasizes that, although it will permit the claim to proceed for now, it appears to add very little of substance to the case and is likely merely duplicative of the plaintiff's other claims.

### C. Count VI: TCPA Claim

The TCPA creates a private cause of action by any person who "suffers an ascertainable loss of money . . . as the result of the use or employment by another person of an unfair or deceptive act or practice described in [Tenn. Code Ann.] § 47-18-104(b) and declared to be unlawful by this part." Tenn. Code Ann. § 47-18-109(a)(1). Tenn. Code Ann. § 47-18-104(b)(1) makes it an "unlawful" "unfair or deceptive practice" to "[f]alsely pass[] off goods or services as those of another."

Count VI of the Complaint sets forth a claim under the TCPA. The entire factual basis for the TCPA claim is as follows:

> 96. Moore misappropriated, copied, and disseminated the Titan Confidential Information and Trade Secrets and forwarded the information to unauthorized third parties who had no permission or authority to see the information.
>
> 97. Likewise, upon information and belief, Moore provided Titan's Confidential Information and Trade Secrets to Protean in order to copy and misappropriate Titan's products and know-how as Protean's own which constitutes an unfair and deceptive act under Tenn. Code Ann. § 47-18-104(b)(1).

(Doc. No. 1 ¶¶ 96–97.)

Moore seeks dismissal of the TCPA claim primarily because it is "inextricably intertwined with [Titan's] TUTSA claim, relies on the same proof, and[,] therefore, is preempted." (Doc. No. 28, at 8.) In the alternative, it argues that the claim is subject to dismissal because (1) Moore's

alleged actions are not covered by the Act, particularly because Titan was not acting as a consumer, no consumer transaction is at issue, and no consumers were affected by Moore's alleged acts; (2) the TCPA is not an appropriate vehicle for employer/employee claims; and (3) the TCPA does not govern or prohibit unfair competition.

Titan responds that it does not have to be a consumer to bring a TCPA claim; the claims against Moore do not arise within the employment context; and "the gravamen of Titan's TCPA claim is that Defendant 'pass[ed] off' Titan's products as Protean's own, in violation of Tenn. Code Ann. § 47-18-104(b)(1)." (Doc. No. 33, at 11.) It acknowledges that proof of a TCPA claim depends on "false or misleading representations of fact" and asserts that it can prove its TCPA claim "simply through Defendant's falsely 'passing off' Titan's software functionality as Protean's own." (*Id.* at 12.) Moore, in his Reply, points out that the plaintiff is now asserting an entirely new theory of relief under the TCPA, insofar as it asserts that the TCPA claim is effectively a "passing off" claim and that, its assertions to the contrary notwithstanding, it does not "explicitly allege" anywhere in the Complaint that *Moore* "'pass[ed] off' Titan's products as those of Protean[]." (Doc. No. 34, at 5 (quoting Doc. No. 33, at 12).)

Titan is correct that it does not have to be a consumer to bring a claim under the TCPA. *See Asurion, LLC v. SquareTrade, Inc.*, 407 F. Supp. 3d 744, 751 (M.D. Tenn. 2019) (Campbell, J.) (finding that a "competitor has standing to bring a claim under the TCPA" because, "[a]s stated expressly in the TCPA, a claim may be brought by any person, including corporations, who 'suffers an ascertainable loss' proximately caused by unfair or deceptive actions declared unlawful by the TCPA"). It is nonetheless clear from the face of the Complaint itself that the TCPA claim is premised entirely upon the same facts that support the TUTSA claim: that Moore misappropriated Titan's trade secrets and other confidential information and provided them to "unauthorized third

parties" and, more specifically, "provided Titan's Confidential Information and Trade Secrets to Protean in order to copy and misappropriate Titan's products and know-how as Protean's own." (Doc. No. 1 ¶¶ 96, 97.) The quoted phrase is somewhat ambiguous, but context and common sense dictate construing it to mean that Moore (allegedly) gave Titan's trade secrets and proprietary information to Protean so that *Protean* could pass off Titan's proprietary products as its own.

Even if this allegation could remotely be deemed an "explicit" allegation that *Protean* was passing off Titan's products as its own, and although Protean has been permitted to intervene in this case, the Complaint has not been amended to expressly assert claims against Protean. And the Complaint does not allege any facts suggesting that *Moore* passed off Titan's products to anyone as either his own or as Protean's.[3] Instead, it alleges that Moore misappropriated Titan's trade secrets by passing them on to Protean. The Complaint fails to allege that Moore "[f]alsely pass[ed] off goods or services as those of another," for purposes of a claim under Tenn. Code Ann. § 47-18-104(b)(1).

The defendant's motion will be granted with respect of the TCPA claim, and this claim will be dismissed in its entirety, both because it is preempted by the TUTSA and because the Complaint fails to allege facts suggesting that Moore violated any provision of the TCPA.

## IV. CONCLUSION

For the reasons set forth herein, Moore's Motion for Partial Dismissal (Doc. No. 27) will be granted in part and denied in part. The motion will be granted in part with respect to Counts II

---

[3] The only allegation concerning Protean's possible use of Titan's intellectual property states, "after Moore began acting as Protean's Chief Product Officer, Protean's website began touting new software functionality that closely resembles Titan's features." (Doc. No. 1 ¶ 63.) Protean's website qualifies as representations by Protean, not Moore.

and III and granted in its entirety as to Count VI.

    An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge

Case 3:24-cv-00400   Document 51   Filed 12/12/24   Page 14 of 14 PageID #: 345